AVERY F. BLAKE, JR., AND JUDITH BLAKE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; CORWIN E. AND NANCY M. BJONERUD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Blake v. Commissioner
Docket Nos. 12636-89, 12803-89
United States Tax Court
T.C. Memo 1993-468; 1993 Tax Ct. Memo LEXIS 479; 66 T.C.M. (CCH) 1006; October 5, 1993, Filed An appropriate order and decision will be entered at docket No. 12636-89.
An appropriate order and order of dismissal will be entered at docket No. 12803-89. *479 For petitioners: Roger A. Pott. For respondent: Kevin G. Croke and Marion T. Robus. FAY
FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: These cases are before the Court on petitioners' Motions for Award of Reasonable Litigation Costs and for Determination Increasing Statutory Attorney's Hourly Fees, filed July 19, 1990, in docket No. 12636-89, and filed July 10, 1990, in docket No. 12803-89. At the time their petition was filed, petitioners Avery F. Blake, Jr., and Judith Blake resided in Tiburon, California, and petitioners Corwin E. and Nancy M. Bjonerud resided in San Bruno, California. The Blakes and Bjoneruds (hereinafter petitioners unless otherwise indicated) filed joint Federal income tax returns with the Internal Revenue Service Center in Fresno, California, for taxable year 1982. The statutory notices of deficiency upon which petitioners' cases are based were dated March 9, 1989. During taxable year 1982, petitioners were shown as partners on the Genetic Research Partners, Ltd. (GRPL), partnership return (Form 1065) and claimed losses from the GRPL partnership return on their respective individual income tax returns for 1982. On their joint 1982 tax returns, *480 the Blakes claimed an $ 18,000 loss, and petitioners Bjonerud claimed an $ 11,800 loss as a result of their respective participation in GRPL. The threshold issue to be decided in these cases, for purposes of whether or not this Court will award reasonable administrative and litigation costs under section 7430, [1] is whether or not respondent was reasonable in proceeding through the administrative process and the initial stages of litigation on the conclusion that GRPL was formed prior to September 3, 1982. [2]
*481 FINDINGS OF FACT A joint stipulation of facts was filed by the parties on March 10, 1992. By this reference, those facts are so found. The net worth of the Blakes and the Bjoneruds, individually, did not at any time during the course of these cases exceed $ 2 million dollars. Respondent began an examination of GRPL's return for the tax year 1982 in November 1984 with the assistance of Revenue Agent Kathleen Jue (the revenue agent). The revenue agent, after assignment, made numerous attempts over several months, with no success, to contact several limited partners and the general partner listed on the 1982 return. Finally, in early 1985, the then general partner, Harold Coffin (Coffin), was located. The revenue agent contacted Coffin and explained she wished to meet so as to conduct an audit of the partnership. This meeting was held in April of 1985. The revenue agent, at this time, was attempting to resolve two deductions on the partnership's tax return: A research and development expense of $ 470,000 and an amortization of general partner's fee of $ 2,000. Coffin provided some books and records, but he was unable to answer some questions. Coffin told the revenue agent *482 that a David Sutton (Sutton) would be able to provide the answers since, Coffin told her, Sutton was the only official that would remember what had happened at that time. At the time of this referral, the revenue agent was in possession of documentation which established Sutton's involvement in and knowledge of partnership matters at the time in question. Sutton was then contacted, and a meeting was held on November 13, 1985. Sutton began employment in 1983 as comptroller of Transworld Genetics, Inc. (TWG), and subsequently became vice president, chief financial officer. GRPL was organized and promoted by TWG, which was incorporated on February 17, 1982, and was primarily used for raising risk capital for TWG. At their meeting, Sutton told the revenue agent that GRPL had been formed at about the same time as TWG in February 1982. [3]
Late in 1985, after reviewing *483 and considering all evidence available to her, the revenue agent considered the partnership to be a non-TEFRA partnership. The revenue agent secured this information from Coffin, the general partner of the partnership. [4] The revenue agent's resolution of the partnership examination was to allow the amortization and disallow the research and development expense. *484 The GRPL examination was closed unagreed without a closing conference because Coffin had closed his office and would not return the revenue agent's calls. On July 22, 1987, the revenue agent transmitted her report on the 1982 Federal tax return of GRPL and the unagreed issue of the research and development fee of $ 470,000. As a result, on September 2, 1987, respondent issued to petitioners a report entitled "Income Tax Examination Changes". Shortly thereafter, in September 1987, petitioners' counsel commenced representation of petitioners Blake. In December of 1987, petitioners' cases were assigned to Appeals Officer Lawrence Dorr (Appeals Officer No. 1). Appeals Officer No. 1 reviewed the issues and available information so as to determine whether additional information would be necessary to aid him in attempting to settle the cases. Appeals Officer No. 1 concluded, after examination of the file, that the revenue agent needed to further develop the issue of whether GRPL was a partnership subject to the TEFRA audit and litigation procedures. At that time, Appeals Officer No. 1 also cited , while recommending *485 that the examining officer reconsider the TEFRA aspects of the case, determine whether the partnership existed and was engaged in business activities prior to September 3, 1982, and provide evidence of the non-TEFRA status of the partnership before further Appeals consideration. Promptly thereafter, the revenue agent submitted a memorandum which analyzed the record and supported her opinion that GRPL was not a TEFRA partnership. [5] In addition to the amortization deduction taken on GRPL's Federal tax return, and Sutton's statements, additional evidence of the partnership's commencement in early 1982 existed in the private offering memorandum. [6] In light of these facts, respondent would be justified, in the face of such contradictory evidence, to conclude that operations had begun as early as February 1982. *486 Upon receipt and consideration of the revenue agent's report, Appeals Officer No. 1 determined that TEFRA was not applicable and continued the Appeals consideration of the unagreed issues. [7] Appeals Officer No. 1 also based his conclusion on the fact that at no point did the partnership, its partners, or any of its representatives represent itself either to the Internal Revenue Service or to its own partners as a TEFRA partnership. Throughout the pendency of the audit and subsequent Appeals process, the partnership had not appointed a tax matters partner, and there was nothing in the offering, or in the legal opinion given in the offering, that discussed TEFRA proceedings. Furthermore, petitioner's counsel prepared a position memorandum of facts and law on September 21, 1988, regarding the issues raised by respondent in her report of income tax examination changes which never mentioned a TEFRA or statute of limitations issue. *487 On September 22, 1988, petitioners' counsel sent the position memorandum to petitioners Blake. In that correspondence, counsel explained to petitioners Blake that he had been involved in legal research of cases similar to the instant cases and that his research of the issues involving GRPL merely confirmed the strength of respondent's position and did not give petitioners much confidence in eventually prevailing. Neither this letter nor the attached position memorandum raised the issue that GRPL might be a TEFRA partnership. [8]
Appeals Officer No. 1 spent several unsuccessful months trying to contact Coffin. Eventually, Coffin was contacted, and a meeting took place. Subsequent to this, however, *488 Coffin failed to respond to Appeals Officer No. 1's correspondence. Appeals Officer No. 1 was also met with resistance from petitioners' counsel, who failed to respond to a January 9, 1989, correspondence which indicated notices of deficiency would soon issue. We now find respondent was met with resistance during this crucial time period, but, despite this, she acted reasonably. On March 9, 1989, once it became clear that no further information would be forthcoming, respondent issued the notices of deficiency to petitioners. On June 8, 1989, petitioners' counsel filed a petition on behalf of petitioners Blake. On June 9, 1989, petitioners Bjonerud filed a pro se petition. Neither of these petitions raised the issue asserting that the partnership was a TEFRA partnership nor affirmatively pled the statute of limitations as a defense to the position taken by respondent in her notices of deficiency. In November of 1989, petitioners' counsel commenced representation of petitioners Bjonerud. On March 5, 1990, Appeals Officer Dewey Johnson (Appeals Officer No. 2) received documentation from petitioners asserting, for the first time, that GRPL was a TEFRA partnership. Three of the *489 documents provided on March 5, 1990, had not previously been provided to respondent. On March 9, 1990, respondent's counsel telephoned petitioners' counsel, after having considered the new documentation and petitioners' recent submission and notified him that respondent would concede the GRPL adjustments. Respondent's concessions were formally confirmed by a letter dated April 3, 1990, to petitioners' counsel. OPINION Section 7430(a) authorizes an award to the prevailing party of reasonable administrative costs incurred in any administrative proceeding within the Service and of reasonable litigation costs incurred in any court proceeding. In order to qualify for such an award, petitioners must: (1) Prove that they are a prevailing party by, inter alia, establishing that the position of the United States in the proceeding was not substantially justified; (2) not have unreasonably protracted either the administrative or the court proceeding; [9] (3) show that the costs claimed are reasonable administrative or litigation costs within the meaning of section 7430(c)(1) and (2); and (4) in the case of their claims for reasonable litigation costs, have exhausted the administrative remedies *490 available to them. See sec. 7430(b) and (c). Petitioners have the burden of establishing all of the foregoing criteria in order to recover reasonable administrative and litigation costs. Rule 232(e); . The issues remaining to be decided in the instant case are: (1) Have petitioners established that the position of respondent was not substantially justified, and (2) if so, then to what extent, if any, are the fees claimed reasonable? Since we hold that respondent was not unreasonable in maintaining her position, both in the administrative and judicial proceedings, [10] *491 we do not reach the issue of whether the award petitioners seek is reasonable. [11]
To be considered a prevailing party within the meaning of section 7430(c)(4), petitioners must show, inter alia, that the position of the United States[12] in the proceeding was not substantially justified. Sec. 7430(c)(4)(A)(i). *492 The prevailing party in both administrative proceedings and judicial proceedings who seeks reasonable administrative and litigation costs must establish separately that the position of the United States in each such proceeding was not substantially justified. , affg. in part, revg. in part, and remanding . The determination of whether that position was substantially justified in each of the proceedings depends upon whether it was reasonable. , affd. . A determination of reasonableness must be based on all the facts and circumstances surrounding the proceeding in question. , affg. ; Petitioners bear the burden of proving that respondent's position was not substantially justified. Rule 232(e); . *493 Petitioners, in meeting their burden of demonstrating that the position of the United States was not substantially justified, must show that, as of the time period applicable under section 7430(c)(7) in respect of each of the proceedings, legal precedent did not substantially support that position, given the facts available to respondent. ; . In deciding whether petitioners have met their burden, we will examine the basis for respondent's position and the manner in which the position was maintained. . The fact that respondent conceded the case is not sufficient to establish that her position is unreasonable. . In assessing respondent's position in each of the proceedings, we may consider, inter alia, whether respondent used the costs and expenses of litigation to extract unjustified concessions from petitioners, whether respondent pursued litigation *494 to harass or embarrass petitioners, or whether respondent's pursuit of the present litigation was politically motivated. ; . Based on the record as a whole, we find that respondent has not acted with any ill will or bad faith which might support a finding of unreasonableness based on the above-mentioned factors. A brief summary of the issues and evidence in the record leads to the conclusion that respondent's position during the administrative and litigation phases was not unreasonable. Petitioners argue, in essence, that, given the factors discussed in (setting forth some factors the Court considered in determining the date of commencement of a partnership), respondent should have determined that GRPL was a partnership subject to the partnership audit and litigation procedures of TEFRA. Furthermore, petitioners argue that respondent did not consider Sparks, and, as a result, *495 (respondent substantially unjustified because she disregarded newly issued Sparks opinion and failed to promptly concede), supports an award of administrative and litigation costs under section 7430. We disagree with both of these contentions and now find that such arguments are not supported by the record. , is relied on by petitioners. We find, after consideration, that Sparks is distinguishable from the instant cases. In Sparks, the Court stated, inter alia, that the determination of partnership formation is a question of fact. The facts on this record justify respondent's position and thereby support a finding that respondent acted reasonably. The Court in Sparks made its determination on a fully stipulated record. In fact, it is jointly stipulated in the instant cases that the first formal assertion supporting petitioners' position that GRPL was a TEFRA partnership subject to the partnership audit and litigation procedures was in a February 27, 1990, letter from petitioners' counsel to respondent's Appeals Officer No. 2. Despite Appeals Officer No. 1's earlier investigation into the TEFRA *496 versus non-TEFRA issue, concluding that respondent would proceed on a non-TEFRA basis, respondent's position was still substantially justified even in light of the March 9, 1990, concession. Respondent received counsel's February 27, 1990, letter on March 5, 1990. Respondent also received documentation tending to support petitioners' assertions. Three of the documents received at that time had not previously been provided to respondent. After consideration, respondent conceded her position on March 9, 1990. Respondent here had no assertions from representatives of GRPL, petitioners, or petitioners' counsel, until March 5, 1990, that uniformly confirmed that the partnership may have been formed after September 3, 1982. [13] The record in these cases supports a finding that respondent was met with resistance throughout these proceedings. Furthermore, we find that the failure of all people involved with GRPL to cooperate with respondent throughout the Appeals process prevented respondent from confirming GRPL'S commencement date. *497 The Stieha decision is also distinguishable. In , this Court addressed the issue of whether the Government was substantially justified in failing to promptly concede an issue which had been decided by this Court in the taxpayers' favor. On the date when the Government issued the notice of deficiency to the taxpayers in Stieha, no cases had been decided by this Court concerning the pertinent issue in that case. Several months later, this Court filed its opinion in , which had decided the issue in a manner favorable to the Stieha taxpayers' position. The Court in Stieha found that the Government's failure to promptly concede in light of the recent opinion in Sparks led to a position which was not substantially justified. Reliance by petitioners on Stieha in the instant cases is misguided. The Stieha decision to award costs was premised on the Court's finding that "it [was] apparent that * * * [the Government] had ignored our decision in Sparks on the partnership audit and litigation procedures (sec. 6221 et seq.), which *498 * * * [respondent] had requested an extension from this Court to research." . The Court also stated that the Government's lack of diligence in reviewing the taxpayers' case, particularly because Sparks had been published 2 months before the Government filed the Notice of Objection, was not substantially justified. Id. The Court then found that the taxpayers were entitled to an award for unnecessarily incurred costs due to the Government's failure to review the taxpayers' case in a reasonable and timely manner. Id.
Based on the record in the instant cases, it is clear that respondent, in issuing the notices of deficiency to petitioners, had not ignored, or delayed consideration of, the Court's opinion in Sparks. Rather, respondent, through Appeals Officer No. 1, raised the issue on her own, had it analyzed and researched, and, after reviewing the conflicting information available, made an educated decision, in the absence of contrary assertions, that there was sufficient information to proceed on the basis that the partnership may have been formed prior to the enactment of TEFRA. Here, once *499 petitioners first raised the TEFRA issue, respondent acted quickly in considering petitioners' cases and, as a result, decided to concede the GRPL adjustment only 4 days later. Consequently, the Stieha decision does not control the outcome of the current motions. Therefore, respondent's determination was reasonable, and such position was substantially justified. The statutory notices of deficiency were issued when Appeals Officer No. 1 was unable to resolve the issue of the disallowance of the research and development expense. This was only done, however, after petitioners' counsel was advised that the notices would be issued unless additional information was provided. Petitioners' counsel failed to respond to this request, and the notices of deficiency issued. In light of the foregoing, the Court finds that respondent's position in these cases was substantially justified. Petitioners' motions for award of reasonable costs are denied. An appropriate order and decision will be entered at docket No. 12636-89.
An appropriate order and order of dismissal will be entered at docket No. 12803-89.
Footnotes
1. All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩
2. This date is significant in that partnerships formed subsequent to Sept. 3, 1982, pursuant to sec. 402(a) of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, 96 Stat. 648, would be governed by the partnership audit and litigation provisions of the Code, secs. 6221-6233. If the partnership taxable year commenced prior to Sept. 4, 1982, the TEFRA partnership audit and litigation procedures of secs. 6221-6233 normally would not apply.↩
3. The revenue agent had contemporaneous notes to this effect which we find more reliable than someone's memory of such a meeting roughly 7 years later.↩
4. Thus, as a result of Coffin's authority and referral, the revenue agent relied, in part, on the information provided to her by Sutton for purposes of determining when GRPL began operations and whether or not TEFRA or non-TEFRA procedures should apply. The revenue agent's conclusion to treat GRPL as a non-TEFRA partnership was also based on the fact that on the 1982 return, the partnership was reporting on the accrual method of accounting and had recorded a deduction of $ 2,000 for incurred general partner's fees. In deducting 12 months of amortization in 1982, the partnership represented that it incurred a business expense as of Jan. 1, 1982. See infra↩ note 6.
5. We find that the revenue agent acted reasonably and appropriately discussed the factual issues pertinent here.↩
6. Under the heading of "Organization Expenses" in the Private Placement Memorandum it was stated that The Partnership may, however, elect under Section 709 of the Code to amortize those expenses pro rata over sixty (60) months. The General Partner's Fee of $ 10,000 will be paid by the Partnership and twenty percent (20%) will be deducted in 1982, with the balance deducted over the following four years↩. [Emphasis added.]
Such language could lead the revenue agent to infer that GRPL was engaged in operations for all of 1982 since the full year's amortization was going to be deducted for 1982.
7. In reaching his conclusion, which we find to be reasonable, Appeals Officer No. 1 determined that GRPL was a tax shelter entity since there was no evidence that it had engaged in any sort of trade or business. Appeals Office No. 1 did not place much weight on the fact that the various agreements were signed on Dec. 30 or 31, 1982, since his experience indicated that it was not uncommon for all sorts of documents to be executed at the end of the year by tax shelter entities whether they were actually in place or not.↩
8. At that time, petitioners' counsel was in possession of numerous records which should have caused him to raise the TEFRA issue; yet he failed to raise the issue. It was not until Feb. 27, 1990, almost a full 9 months after he filed the Blake petition, that counsel formally raised the TEFRA issue with respect to GRPL.↩
9. Although not presented as an issue for purposes of these motions, the Court believes that the excessive costs subsequent to respondent's concession might, upon further inquiry, indicate an unreasonable protraction of the Court proceedings.↩
10. The position of respondent in these cases was consistent throughout the proceedings; thus, the same result will occur under each part of the analysis.↩
11. Respondent's position was reasonable; however, if it were otherwise, a large majority of the claimed award would have been deemed unreasonable and, therefore, not awarded. The Court finds it incredible that, of the $ 97,767.35 of fees and $ 2,698.58 in costs for both cases claimed by petitioners' counsel in these matters, $ 83,678 in fees and $ 2,423.91 in costs was amassed subsequent to respondent's concession, with only $ 3,868.50 of such fees and $ 171.68 of such costs attributable to the initial motions for fees and costs, filed July 19, 1990, and July 10, 1990, on behalf of petitioners Blake and Bjonerud, respectively.↩
12. For purposes of petitioners' claims for reasonable administrative costs, the "position of the United States" means the position taken by respondent in an administrative proceeding to which sec. 7430 applies as of Mar. 9, 1989, the date of the notice of deficiency in these cases. Sec. 7430(c)(7)(B). These cases were commenced by the filing of the petitions on June 8, 1989, and June 9, 1989, by petitioners Blake and Bjonerud, respectively. Therefore, the "position of the United States" for purposes of petitioners' claims for reasonable litigation costs means the position first taken by respondent in these cases on or after those dates. Sec. 7430(c)(7)(A).↩
13. Sec. 301.7430-5(c)(1), Proposed Proced. & Admin. Regs., (Dec. 23, 1992), states: A significant factor in determining whether the position of the Internal Revenue Service is substantially justified as of a given date is whether, on or before that date, the taxpayer has presented all relevant information under the taxpayer's control and relevant legal arguments supporting the taxpayer's position↩ to the appropriate Internal Revenue Service personnel. [Emphasis added.]
While this proposed regulation was not in effect for the time period involved in these cases, and, therefore, we do not now rely on it, it is indicative of this Court's thinking in the instant case. We cannot expect respondent to concede a reasonable position where no argument exists to the contrary.